Good morning, Your Honors. Robert Friedel for Appellant Kimberly Grant. Also present in court today is Ms. Grant. Your Honors, this is really a simple appeal that turns on two basic concepts. Collateral estoppel and the Rooker-Feldman Doctrine. Applying these concepts to the facts of this case, it is clear that the District Court should have remanded the case to State Court rather than dismiss it with prejudice. I'll start with collateral estoppel. As the District Court determined When you say the case, can you separate the Federal claims from the State claims? You shouldn't have remanded the Federal claim to State Court. Well, there is one part of the Federal claim that the Court found did not succeed on the merits, and that was a subset of the FDCPA claim under subsection 1692G. Right. So that part of the case is gone, it's dismissed, and we do not suggest that that should be remanded. So what you're talking about is remand the State cases to the State court? The State claims and also the remainder. There are other sections under the FDCPA that the Court initially found in Grant 1 was subject to the Rooker-Feldman Doctrine. The Court in Grant 1 determined that the entire case, other than the claim, the little claim of section 1692G, was all subject to Rooker-Feldman, and therefore the Court did not have subject matter jurisdiction over any of the remainder of the case other than that little part that it dismissed on the merits. And that was in Grant 1. So the original complaint in Grant 2 brought FDCPA claims and said, and others, didn't expressly mention the 1692G-A claim, but the district court obviously thought it was in there. And wouldn't that have been sufficient to make the initial removal proper, because that had not been rejected on subject matter jurisdiction grounds but on the merits? Well, the removal may have appeared facially compliant, except that all the rest of the case had been determined to be subject to Rooker-Feldman. So there's an issue of collateral estoppel. But not the 1692G-A, which had been dismissed on the merits in Grant 1, correct? Yes. To the extent that the original complaint could be read to assert a 1692G claim within the FDCPA cause of action, that would be a Federal claim. So once the district court removed it based on that, and then I know the complaint was amended to eliminate it, but then the district court says, I have jurisdiction under CAFA, CAFA, Class Action Fairness Act, however we pronounce that acronym. Why wasn't that correct? She made the findings, and they don't seem to be disputed. That wasn't correct because the entire rest of the case was already determined to be subject to Rooker-Feldman in Grant 1. But not the state claims, right? There was fraud and another couple of state claims, the state version of the FDCPA. Yes. And so she's asserting diversity jurisdiction under Class Action Fairness Act. That's what she says. What's wrong with that? Well, the fraud claim and the Rosenthal FDCPA claim, the court also determined, were basically coming out of the same primary right as the other claims that had been subject to Rooker-Feldman. So they were all part and parcel of claims that were subject to Rooker-Feldman or were determined in Grant 1 to be subject to Rooker-Feldman. In Grant 2, as the court determined, there was an issue of estoppel. The court brought up the remarkably similar case of Johnson v. LaSalle, and quite similar. In that case, the defendants convinced the district court in a prior action that it lacked subject matter jurisdiction over the plaintiff's claims under the Rooker-Feldman doctrine, just like our case. Plaintiff filed a new action in state court. Defendants removed the action in federal court. And then the defendants were estopped from relitigating the subject matter jurisdiction in response to a motion to remand. And the interesting thing about that case is the magistrate, whose findings were accepted, actually determined that the original determination that Rooker-Feldman applied was incorrect. But the defendants were collaterally estopped from asserting that subject matter jurisdiction existed. Even if we agree with that, let's say that all of the claims that the district court had previously held in Grant 1 were barred under Rooker-Feldman, there still were claims. There was one federal claim and two state law claims that hadn't been addressed in Grant 1 that were before the district court, which said it had jurisdiction under to dismiss them on race-judicata grounds. Well, the new claims were state claims. There was fraud, which is a state cause of action, and the Rosenthal Fair Debt Collections Practices Act, which is also a California claim. So I think that's incorrect in that all the federal, the FDCPA claims within that cause of action, other than the 1692G claim, had originally been determined to be subject to Rooker-Feldman. So are you saying that the district court lacked subject matter jurisdiction over the two state law claims that hadn't been raised in Grant 1? Yes. I think the district court did lack subject matter jurisdiction over those to the extent it found that they were derivative or based on the same primary right as the other claims that it had already determined were subject to Rooker-Feldman. And the plaintiffs don't dispute that, that the court's initial determination and its suggestion in the OSC that originally started the ball rolling here was correct, that there was no subject matter jurisdiction and, therefore, the case should be remanded. And that's really the crux of this case here. Mr. Friedell, I don't think you quite answered Judge Ikuda's question. What was the new federal claim in Grant 2 that hadn't been adjudicated in Grant 1? I don't think there was a new claim in Grant 2 that wasn't adjudicated. All right. There were two state claims, Fraud and Rosenthal Act, that had not been in Grant 2, Grant 1. That is correct. It was a putative class action. Yes. It was for more than 100 plaintiffs and more than $5 million. Why couldn't the district court exercise CAFA jurisdiction to dismiss with prejudice? Assuming the evidence was sufficient to establish the jurisdictional limits of CAFA. The reason is because if the court could exercise CAFA jurisdiction over the case, even though the case, other than the one small 1692G claim, was subject to Rooker-Feldman, that would eviscerate the Rooker-Feldman doctrine. For example, in Grant 1, we brought a federal claim, we brought state claims. It was a putative class action. If that were the law, then the court would have been incorrect in Grant 1 in dismissing the case because it would have had jurisdiction. When Unifund removed it to district court the second time, what was the basis of, what was the assertion of jurisdiction? Federal question. Okay. So when was CAFA raised? It was raised in one of the motions, I believe, in connection with the motion to remand. Okay. Now, do we have any law, any place that discusses what happens when we have an after-acquired basis for jurisdiction after a case has already been removed? After a case has been removed, there's a short period of time to amend the notice of removal, which is 30 days. And the court, Unifund, did not amend the notice of removal either within 30 days or at all. That's only if the first basis for removal doesn't work. Where here we assume 1692 GA, assuming that that was an appropriate basis for removal, then doesn't Williams v. Costco say that you can then assert other forms of jurisdiction? I mean, I don't see that there would be any reason why the district court couldn't have diversity jurisdiction assuming it was properly removed in the first case. Isn't that what that Costco case says? I don't know that case, Your Honor. Yeah. It says if the original complaint in fact supported Federal jurisdiction on both diversity and Federal questions grounds, Costco was not required to list both grounds in its notice of removal. So it seems like if the district court determines later that it has diversity jurisdiction, I don't see why there was any need to change the notice of removal, assuming its basis for removal was proper initially. I think the court determined it had CAFA jurisdiction, not diversity. Well, CAFA is a form of diversity jurisdiction, right? Yeah, I guess so. Whether the court could in fact sua sponte determine it had CAFA jurisdiction, the point remains that if a court could do that, it could then basically end run the Rooker-Feldman doctrine in that any state court loser could challenge state court judgments by going to Federal court, tagging along one Federal claim or bundling in a class action, and then district courts would be free to disregard the entire Rooker-Feldman doctrine because suddenly jurisdiction is based on something else. It's based on CAFA. So there's a question as to whether Rooker-Feldman trumps CAFA or not. I guess I don't understand that. So say in grant two, the plaintiff brings a claim on 1692 GA grounds, which had been dismissed on the merits, and two new state law claims, and the district court asserts jurisdiction, and then the complaint is amended to get rid of the 1692 GA claim, but still has jurisdiction under CAFA, and then dismisses them, race judicata. What's wrong with that? That doesn't make an end run to ground anything. Well, if it was dismissed without prejudice, that would be fine, or if it was remanded. The reason that that isn't good is because under 28 U.S.C. 1441C, the statute says if at any time before final judgment it appears that the district court lacks subject matter jurisdiction. But in my hypothetical, the district court has subject matter jurisdiction. It just was a claim that was barred by race judicata. Well, it could have had subject matter jurisdiction over the one that was barred by race judicata, by the way, and that's ER at page 9, I believe, is only the 1692 G. The court determined that the rest of the case was subject to collateral estoppel, so it's a different analysis. Once collateral estoppel applies, the question is, who's estopped from litigating subject matter jurisdiction? And as the Johnson v. LaSalle case demonstrated, it is the defendant who prevailed in Grant 1, who convinced the court that there was no subject matter jurisdiction over all these other claims. That is a stop from now saying, wait a minute, there's subject to this jurisdiction, but just long enough to dismiss the case on its merits. When was Johnson decided? It was decided in 2009, Your Honor. After Capito was enacted. I don't recall when Capito was enacted. Capito was enacted in 2005. Thank you. Anyhow, so going back to where I left off, the Johnson v. LaSalle actually operated as a blueprint as to why this case should have been remanded based on collateral estoppel. Where the district court went wrong was it looked at Johnson v. LaSalle, and instead of determining that the defendant. That's a district court case, correct? Yes. Okay. From Minnesota? Yes, it is. Okay, thanks. But I think the court found that factually it was very similar. The only problem with the court's application was it did not realize that it's the defendant who was stopped from now relitigating subject matter jurisdiction instead of the plaintiff. Okay. We've taken you well over your time. I will allow you a minute for rebuttal. Thank you, Your Honor. Good morning, and may it please the Court. Jeff Topper on behalf of the Applebee's Unifund CCR Partners and Unifund Corporation. Shanker. I think this case is controlled by Shanker. I can't pronounce the first name, so I'm using the last name. There's two orders here before the Court, Your Honors. The order of dismissal, which was based on res judicata, not Rooker-Feldman. We've heard a lot of talk about Rooker-Feldman, but I want to be clear that the dismissal was based on res judicata. And then there's the order denying reconsideration. The district court properly dismissed based on res judicata, and it did not abuse its discretion when it denied the motion for reconsideration. Once the district court determined that it had removal jurisdiction because the original complainant, Grant, who on its face raised a federal claim, the FDCPA claim. Which was the 1692 GA claim. That's certainly part of it, but there were numerous other claims asserted under the FDCPA, approximately half a dozen different violations. On the face of the complaint, we have a federal claim. And those had already been dismissed with prejudice in Grant 1. Those, yes, those had been. But again, from the face of the complaint, we have a federal claim there. Whether it's the 1692 GA or the additional FDCPA claims, Your Honor. So removal is proper. And then the district court determines that the federal claims are barred by res judicata. It then has discretion under Schenker to decide whether it's going to retain supplemental jurisdiction over the state law claims. And we submit that it didn't abuse its discretion in doing that or in dismissing. As to the original complaint in Grant 2, the other additional factor besides the fact that it's on the face, asserts a claim under 1692 G, is that we have a new defendant added who was not a party to Grant 1. And this is Unifund CCRLLC. So there's an argument that we were collaterally stopped from raising jurisdiction again. But Unifund CCRLLC was not a party to Grant 1. In a res judicata analysis, would they be deemed to be in privity to the defendant? Your Honor, I confess I don't know the exact relationship between Unifund CCRLLC and Unifund CCR Partners. I know that Unifund CCR Partners is essentially the servicer. So are their interests aligned or are they extremely different in this case? I don't know the answer to that question, Your Honor. Mr. Topper, I was your citation of Schenker. Yes. For the proposition that the Court retains jurisdiction in a discretionary manner to dismiss the claims, the state law claims. I read it a little differently. I read Schenker at page 938. Section 1447C means that if it is discovered at any time in the litigation that there is no federal jurisdiction, a removed case must be remanded to the state court rather than be dismissed. Am I reading it wrong? With respect, I think you are, Your Honor. The way I read Schenker is that if there was jurisdiction originally, which there was from the face of the complaint in Grant 1 based on the 1692GA claim, if that later evaporates, which is what happened in Schenker, they What happened here? Pardon me? And what happened here? Subsequently, yes. So if it exists originally, then the Court has discretion. If it does not, if jurisdiction does not exist originally, at the inception I should say, so that we don't get confused about original and supplemental and whatnot, then you would not have discretion to retain. But the Court in Grant 1 decided that it lacked jurisdiction under Rooker-Feldman. As to the non-1692G claims under the FDCPA. So the 1692G claim, the Grant 1 Court decided on the merits. Yes. And then that, it read that as being one of the claims in the original grant complaint. And so, as I understand it, the removal jurisdiction would have been proper federal question jurisdiction on the 1692GA claim in that original complaint. Is that your argument? Yes, because you look at it at the time of removal. And so what, in the first amended complaint, they made it clear they were not raising that sort of claim. Does jurisdiction evaporate with that change with the first amended complaint? It may, but again, it existed. The question is did it exist at the time of removal. So removal was proper. And then the District Court determined it had diversity jurisdiction under CAFA. Yes, it did. But if you're playing the game that closely and you're arguing that it existed at the time of removal, at the time of removal you didn't assert CAFA. This is after acquired. At least it's after argued. Well, both, Your Honor. We didn't assert it because that didn't exist as, again, I mentioned Unifund CCR Partners, which was the defendant that was added after the OSC was issued. Remember, they dismissed Unifund CCR LLC and then plaintiffs added Unifund CCR Partners. That is the entity that files the lawsuits and filed the lawsuit against Ms. Grant. That is the entity against whom the $5 million in controversy existed. That did not exist prior. I'm sorry. So they were not sued at the time of Grant 2? They were not sued in that complaint? Unifund CCR Partners was not sued in the original complaint in Grant 2. Okay. So they were not a party at the time that it was removed? Correct. Okay. So then, I'm sorry, then when, in response to the OSC, plaintiff dismissed Unifund CCR LLC, filed a First Amendment complaint naming Unifund CCR Partners. At that point, the basis for CAFA jurisdiction arose. But that's in the First Amendment complaint? Yes. Okay. But the First Amendment complaint is also the one that disavows that they're suing under 1692A. So you wanted to cite the First Amendment complaint for some purposes but not for others. Well, so the First Amendment complaint changed the defendant and also eliminated the basis for removal of federal caution jurisdiction that was in the original complaint. Is that correct? Well, I believe we took the position that the 1692GA claim was, I mean, even though they disavowed it, it's still part and parcel. It certainly was part and parcel of their Rosenthal Act claim, which is the California equivalent to the FDCPA. And it was such an important part of their complaint, the factual allegations regarding this lack of notice, that you might have had jurisdiction that way as well because it raised a substantial federal question. Wait, wait. Raises the fact that it's incorporated in the Rosenthal Act? Yes. And the allegations. That's Merrill Dowell. That one's dead. Well, I guess it would be dead in the context of an FDCPA case. I'm not aware that the Ninth Circuit has said that in the context of an FDCPA case here, Hunter. Or I know the Supreme Court has not. No, not in the context of an FDC, in the context of a Rosenthal Act claim. Well, pardon me. But again, Merrill Dowell was not a Rosenthal Act claim. But I'm barking up the wrong tree there. I realize that, Your Honor. I'm not sure. I want to make sure I answered your question, though, Judge Kruger. Well, I'm just trying to understand the sequence of events. Let's assume that removal under the original complaint was correct on the 1692 GA basis, raising a federal question that over which the district court had subject matter jurisdiction. Then the first amended complaint is filed, eliminates 1692 GA or disavows it, and changes the defendant. And so based on the new defendant, your position is there was diversity jurisdiction under CAFA, correct? Yes. So how do we analyze that? Is that where the opposing counsel says the notice of removal has to be changed? The Williams v. Costco case that I cited earlier says, you know, if there's another basis for jurisdiction, you don't have to put it in your complaint. However, we now have two different complaints with two different issues. So how do we analyze that? I think, Your Honor, I'm not familiar with the Williams v. Costco case other than what I've heard this morning. But I think if you take that and you take a case that we cited in our brief, Cone v. PetSmart, which basically says you don't have to amend your notice of removal when the basis for removal arises subsequently. It sounds like if you put those two together in this situation on these facts, you now have a basis for jurisdiction. I mean, it was properly removed in the first place. So it's not a question where there was no basis for removal in the first place and now you're trying to kind of go back and get a second bite after the fact. I see that my time is up, if I may. I think you put those two together and that allows the court, the district court to say, look, there's CAFA jurisdiction here. And there was no dispute that there was minimal diversity. There was no dispute that there were at least 100 people involved. And the only evidence before the court was the evidence that we submitted in connection with, I think it was in the motion to reconsider stage, that said there's $5 million in controversy here. And under this court's decision a few weeks ago in Ray v. Michael Storrs and its decision late last summer which overruled Loudermilk, we just have to show by a preponderance of the evidence that this elements of CAFA jurisdiction were satisfied. It wasn't rebutted, so there was no clear error, which is the standard that that finding would be reviewed for. Counsel, if we were to, if we're going to apply preclusion doctrines, why aren't we, why isn't the preclusion doctrine run in favor of the plaintiffs and in favor of Rooker Feldman? I mean, that's what the court previously held. Why isn't that the ruling as to which we cannot challenge? And it should just go back to the state courts and the state courts can do whatever with it they need to. And you're still perfectly free to argue that these things have been litigated in federal court and therefore California preclusion rules won't let the suit go forward in state court. But why isn't that the place where we should be applying the preclusion rules? I think, Your Honor, because Congress, I mean, Congress said CAFA jurisdiction is available. And you've got the case in federal court here. There's, I apologize, I'm struggling a little bit here. But, I mean, I think the point that Judge Acuda made earlier is that, you know, look, you're here. How does this trump Rooker Feldman? It doesn't. You go through and analyze it and then you dismiss it. And, you know, we argued as to why under the various ACRI factors and the factors about whether to retain jurisdiction that there was no need to send it back because the same result was going to obtain here. And, again, it was, this case was not Rooker Feldman. But determining, you know, who gets to decide the preclusion rules on the merits is an important question as to whether the federal court gets to decide it or whether the state court gets to decide it. State courts or the federal courts already decided it didn't have jurisdiction on the basis of Rooker Feldman. That suggests that it should go back to the state court where you're perfectly free to argue that on the merits these issues are also precluded. I don't have a response for you, Your Honor. Well, thank you for your candor. Thank you, Mr. Tober. Thank you. Mr. Friedel, you have, I'll give you a minute. That's all I need, Your Honor. Thank you. All I would add is that as far as removal of jurisdiction goes, the thin read as they say on which that stands is whether there's a 1692G claim pled in the original complaint in Grant 2. As we indicated in our briefs, if that's it, that shouldn't be enough because that would be a frivolous and insubstantial claim if it is pled at all. Because that had already been decided, there was raised judicata as to that claim. So we have that defense as well. And the other point I'd like to make is that the evidence of the jurisdictional limit being met with CAFA here is so thin as to be virtually nonexistent. We have one declaration where a member of the defendant's corporate team, I guess, said that in his declaration we have at least 100 lawsuits and the amount in controversy is in excess of $5 million. Even ---- Was that contested in any way? No. The declaration itself is what it is. But that's the limit of the evidence. And it doesn't, in our view, constitute evidence of the type of how many class members, how much are their claims, and therefore it just is not prima facie evidence sufficient to establish the jurisdictional limit. And that's all I have. Okay. Thank you. Thank you. Thank you, counsel, for the argument. It's a very complicated case. And we appreciate your patience with the court. Thank you. Thank you.
judges: Bybee, Bea, Ikuta